Kevin Thomas KIRSCH,
Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C8-88-2452.

Court of Appeals of Minnesota.

May 23, 1989.

Peter W. Cannon, Mahnomen, for petitioner, respondent.

Hubert H. Humphrey, III, Atty. Gen., Joseph Plumer, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by CRIPPEN, P.J., and HUSPENI and SCHULTZ *, JJ., without oral argument.

## OPINION

HUSPENI, Judge.

Respondent Kevin Thomas Kirsch's driver's license was revoked pursuant to the implied consent law. When he petitioned for judicial review, the trial court rescinded the revocation. The Commissioner of Public Safety appeals. We reverse and reinstate the revocation.

## FACTS

Trooper Vincent Day was on routine patrol in the early morning hours of February 7, 1988, when he received a call reporting an accident east of Mahnomen in which someone was lying in the road. On the way to the accident, he met a pickup truck whose occupants advised him that there was a serious accident down the road. Day continued to the accident scene. The weather was cold, snowy and windy.

Day found one vehicle in the south ditch, partially protruding onto the main traveled portion of the road, and another in the north ditch. Respondent's vehicle was stopped in the westbound lane of traffic, facing westbound, with its headlights on. The four injured parties in the vehicle in the south ditch needed medical attention. Someone advised Day that a body was on the road. He found the body in the westbound lane of traffic, east of respondent's vehicle. He checked for a pulse but found none and radioed for an ambulance and assistance.

Respondent testified that he had been out with his friends and his brother, and they had had a couple of beers. While driving eastbound on Highway 200, they came upon the accident scene and saw the vehicles in the ditch and debris. Respondent saw the body in the road and drove around it to avoid it. His three passengers testified that he did not hit the body. Re-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

spondent turned around and went to a nearby residence to report the accident and found it had already been reported. He then drove back to the accident scene and parked in the westbound lane so that his taillights were facing the body and his headlights were aimed down the road; he turned on his flashers.

Respondent offered to assist in shoveling out one of the vehicles, but an officer told him they did not need his assistance. Day then told him to stay in his vehicle and not move it. Day testified that he did not want any vehicles driving through the accident scene. While at this point he did not suspect respondent had been drinking, he thought respondent might have hit the body. Day, who was the only officer on the scene for 10 or 15 minutes, continued with emergency assistance until the ambulance arrived.

Respondent's mother and father arrived on the scene between 1:00 and 1:15 a.m. Respondent joined them in their vehicle for some time. Respondent's mother gave respondent, whose breath smelled of alcohol, some flavored mints to chew. He ate them and returned to his vehicle. Respondent's mother testified that there was no odor of alcohol on respondent's breath.

When Day ultimately approached respondent's vehicle, respondent was seated in the driver's seat and rolled down his window or opened his door. While speaking with respondent, Day testified he could smell the strong odor of an alcoholic beverage from within the vehicle. He looked over respondent's vehicle and found blood and evidence that the vehicle had been driven over the body. Day asked respondent to sit in his squad car. Day testified he could detect the odor of an alcoholic beverage on respondent's breath and noted respondent had bloodshot, watery eyes. Day testified that respondent said he was not sure, but thought he might have run over the legs of the body. He also said he had been drinking.

Day arrested respondent for DWI. He brought respondent to the hospital and read him the implied consent advisory at 2:42 a.m. Respondent agreed to take a blood test which yielded an alcohol concentration of .11.

## ISSUES

1. Did the trooper seize respondent when he told him to remain at the scene and not move his vehicle?

2. Was the Commissioner of Public Safety collaterally estopped from asserting respondent's arrest was proper, because the trial court had decided the issue in respondent's favor in the related juvenile proceeding?

3. Was the trial court's finding of fact as to the length of detention clearly erroneous?

4. Was the length of the detention of respondent at the scene unreasonable?

5. Did the trooper have probable cause to believe respondent had been driving while under the influence?

## ANALYSIS

1. Respondent alleges that a fourth amendment seizure occurred when Trooper Day told respondent to remain in his vehicle and not move it. The Commissioner argues that respondent's vehicle was not stopped by the trooper because it was already stopped when he arrived at the accident scene. *See State v. Vohnoutka,* 292 N.W.2d 756, 757 (Minn.1980). However, we must determine whether the trooper seized respondent when he told him to stay in his car and not move it.

Police have seized an individual only if in view of all the circumstances a reasonable person would have believed that he was not free to leave. *Michigan v. Chesternut,* —— U.S. ——, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988). While Trooper Day did not "stop" respondent's vehicle, he did detain him when he told respondent to stay in his vehicle and not leave it. This show of authority, "which one would not expect if the encounter was between two private citizens" and which would reasonably have led respondent to believe he was not free to leave, produced a fourth amendment seizure. *See* 3 W. LaFave, *Search*

*and Seizure* § 9.2(h) at 416–17 (2nd ed. 1987).

2. In its order the trial court referred to an earlier juvenile proceeding arising out of this incident. In the earlier proceeding, the trial court apparently concluded that there was no probable cause to hold respondent for two hours at the accident scene. Respondent argued below that this earlier determination collaterally estopped the Commissioner from asserting the validity of the arrest in this proceeding.

> Collateral estoppel is applicable where: (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Victory Highway Village, Inc. v. Weaver*, 480 F.Supp. 71, 74 (D.Minn.1979), *quoted in Willems v. Commissioner of Public Safety*, 333 N.W.2d 619, 621 (Minn.1983). The state and the Commissioner of Public Safety are not identical parties and are not in privity. *State v. Juarez*, 345 N.W.2d 801, 802–03 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. July 16, 1984). The estopped party, the Commissioner, was not given any opportunity to be heard in the juvenile proceeding. *Id.* Therefore, collateral estoppel cannot be invoked to preclude consideration of the issue of the validity of the arrest in the implied consent proceeding.

Respondent also contends that the Commissioner is precluded from arguing this issue because he failed to order a transcript in the juvenile proceeding and failed to appeal the juvenile proceeding. These arguments are without merit as the Commissioner was not a party to the juvenile proceeding.

3. The trial court found that respondent was detained some two hours. While the parties dispute the actual length of respondent's detention, there are sufficient facts in the record to show he was detained for a longer period of time than the usual traffic stop. Thus, the trial court's finding was not clearly erroneous. Minn.R.Civ.P. 52.01.

4. The trial court in finding no probable cause to hold respondent some two hours at the accident scene apparently determined that the length of the detention converted the seizure from an investigative detention, requiring a "particularized and objective basis for suspecting criminal activity," *Berge v. Commissioner of Public Safety*, 374 N.W.2d 730, 732 (Minn.1985) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed. 2d 621 (1981)), to a custodial detention or arrest, requiring probable cause, *State v. Harris*, 295 Minn. 38, 42, 202 N.W.2d 878, 881 (1972).

Pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in determining whether a seizure is unreasonable, the dual inquiry of

> whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place

must be made. *Id.* at 19–20, 88 S.Ct. at 1879.

The trial court determined that the facts known to the trooper could have required respondent to stay on the scene for a reasonable time to obtain information. Thus Officer Day's detention of respondent was justified at its inception. Respondent challenges this aspect of the trial court's determination and contends that there was no evidence involving his vehicle in the accident, and that he and his passengers testified he did not hit the body but drove around it. He also cites the trooper's testimony that he was not an accident reconstructionist, and challenges the trooper's statement that he wanted to preserve the scene, because several vehicles had driven through it. However, the placement of respondent's vehicle and the trooper's testimony as to its condition support the trial court's determination on this issue.

Regarding the second prong of the *Terry* analysis, the trial court found that the trooper's action was not reasonably related in scope to the circumstances justi-

fying the initial interference. We cannot agree.

The Supreme Court has held that the length of detention is an important factor in determining whether a seizure longer than the momentary one such as that involved in *Terry* was valid:

> [T]he brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion. Moreover, in assessing the effect of the length of the detention, we take into account whether the police diligently pursue their investigation.

*United States v. Place,* 462 U.S. 696, 709, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983); *State v. McKissic,* 415 N.W.2d 341, 344 (Minn.Ct.App.1987); *see also Berkemer v. McCarty,* 468 U.S. 420, 440 n. 30, 104 S.Ct. 3138, 3150 n. 30, 82 L.Ed.2d 317 (1984).

The Supreme Court has, however, rejected any per se rule on the length of a detention which is reasonable. *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). It found it appropriate to examine whether the police

> diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.

*Id.* Also, the

> law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes, [must be considered].

*Id.* at 685, 105 S.Ct. at 1575. In *Sharpe,* the court held a twenty minute stop was reasonable where the police acted diligently and the suspect's actions contributed to the delay. *Id.* at 687, 105 S.Ct. at 1576.

This case presents a fact situation somewhat different from that usually involved in *Terry*-type stops. The trooper here had a reasonable and articulable suspicion that respondent had committed a crime. The trooper did not interrogate respondent immediately, but instead attended to his other more urgent duties, pertaining to the injured parties and a possible fatality. When he was able to turn his attention to respondent, the matter proceeded without delay.

Case law from other jurisdictions is instructive. In *Commonwealth v. Douglass,* 372 Pa.Super. 227, 539 A.2d 412, *appeal denied,* 552 A.2d 250 (Pa.1988), the driver was involved in a fatal automobile accident. When a trooper arrived fifty minutes later, he noted the odor of alcohol about respondent, and directed him to remain at the scene while the investigation continued. The court held that the initial two hour period in which the driver was detained was reasonable as an investigative detention, rather than a custodial detention, although it was considerably longer than the stop in *Terry.* It noted that while the duration of the detention is "highly relevant," it is not determinative. *Id.* 372 Pa. Super. at 246, 539 A.2d at 421. The court saw no indication the officer was less than diligent in completing his investigation. Further, the driver was "asked" to remain and the only other restraint was that the officer looked his way occasionally. No prolonged interrogation took place, the driver was not told he was under arrest or suspected of any crime, and was not at that point transported against his will. Nor was he subjected to a show, threat, or use of force. *Id.* at 247, 539 A.2d at 422.

Under an analysis similar to *Douglass,* the detention here was not unlawful and was reasonable. The trooper's immediate attention was directed, and properly so, to his duties in regard to the accident victims and the accident scene. Respondent was not physically restrained. There is no indication the trooper delayed his interrogation once he had discharged his most pressing obligations. Because the law enforcement purposes of investigating an apparently fatal accident and attending to injured parties required priority services, we hold that the length of respondent's detention was reasonable.

▪ 5. Finally, the Commissioner argues that the trial court erred in determining that the arresting officer lacked probable cause at the time the implied consent

law was invoked to believe respondent had been driving while under the influence of alcohol. The trial court did not explicitly rule on the issue of probable cause. We need not remand on this issue, but determine instead that the facts demonstrate the existence of probable cause. Although the court rejected the trooper's testimony that he detected the odor of alcohol while talking with respondent when respondent was in his own vehicle, it credited the trooper's testimony that he could detect it while they were both in the squad car. Respondent admitted he had been drinking, the trooper observed bloodshot, watery eyes, and the trooper believed there was evidence respondent's vehicle had been driven over the body. The trooper had probable cause to believe respondent was driving while intoxicated. *See Eggersgluss v. Commissioner of Public Safety*, 393 N.W.2d 183, 185 (Minn.1986); *Rude v. Commissioner of Public Safety*, 347 N.W.2d 77, 80 (Minn.Ct. App.1984).

## DECISION

The order rescinding the revocation of respondent's driver's license is reversed.

Reversed.