STATE of Minnesota, Appellant,

v.

Sancheze Quinton BELL, Respondent.

No. C3–96–1559.

Court of Appeals of Minnesota.

Dec. 31, 1996.

Review Denied March 18, 1997.

605

Hubert H. Humphrey III, Attorney General, St. Paul, for Appellant.

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, for Appellant.

Joseph Margulies, Legal Rights Center, Inc., Minneapolis, for Respondent.

Considered and decided by
SCHUMACHER, P.J., and KLAPHAKE
and FORSBERG,* JJ.

## OPINION

SCHUMACHER, Judge.

The State of Minnesota appeals from a pretrial ruling suppressing evidence, arguing the district court erred in its ruling because respondent Sancheze Quinton Bell consented to the search of his vehicle and was free to refuse consent. We affirm.

## FACTS

On April 4, 1996, Trooper Richard Homan and Deputy Robert Shingledecker stopped Bell for speeding. Homan approached the vehicle, and on request Bell provided his driver's license and proof of insurance.

Homan asked Bell to get out of the car and accompany him to the squad car while he radioed the dispatcher. Upon reaching the squad car, Homan ordered Bell against the car for a patdown search. Homan then placed Bell in the back seat of the squad car. The back doors cannot be opened from the inside.

The records check came back clear. Homan issued Bell a warning ticket for speeding. Homan then asked Bell if he would consent to a search of his car. Bell responded that he did not care. Homan read and

Bell signed a Minnesota State Patrol Consent Search Warning & Waiver card.

Shingledecker and Homan then searched Bell's car. The search produced a handgun under the front seat and a cellophane package containing marijuana. Bell was placed under arrest. A K–9 unit later turned up seven packages of cocaine.

Bell was charged with two counts of second-degree possession of a controlled substance, one count of carrying a weapon without a permit, and one count of possession of marijuana in a motor vehicle. At the Rasmussen hearing, the district court granted Bell's motion to suppress the drugs and gun as the fruit of an illegal search. The district court reasoned that the officers had no probable cause to believe Bell had committed any offense and that his consent to the search was coerced by his seizure in the back seat of the locked squad car. The state appeals.

## ANALYSIS

1. This court will reverse the district court's order only if the state demonstrates clearly and unequivocally that the trial court erred in its judgment and that the error, left unreversed, will have a critical impact on the outcome of the trial.

*State v. Blacksten,* 507 N.W.2d 842, 846 (Minn.1993). The parties agree the district court's order will have a critical impact on the trial. The issue, therefore, is whether the state has clearly and unequivocally shown that the district court erred. *Id.*

The parties do not dispute that stopping Bell for speeding was reasonable. *See Whren v. United States,* — U.S. —, —, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996) (stopping vehicle is reasonable where officer has probable cause to believe driver committed traffic violation). The parties argue whether Bell's detention in the squad car transformed the legal stop into an illegal arrest that coerced his consent to search his car in violation of the Fourth Amendment of the United States Constitution and Article I, Section 10 of the Minnesota Constitution.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

The Fourth Amendment and Article I, Section 10 prohibit unreasonable searches and seizures. Bell was "seized" within the meaning of the Fourth Amendment and Article I, Section 10 when he was placed in the back of the squad car. *See id.* (holding brief detention during automobile stop was seizure for Fourth Amendment purposes). The next question to answer is whether the scope of the detention exceeded constitutional limits.

> Neither the cases of the United States Supreme Court nor of this [state] have imposed a rigid time limitation on the duration of [investigative] stops.

*Blacksten,* 507 N.W.2d at 846. The general rule is that the detention which follows a lawful stop "may not continue indefinitely but only as long as reasonably necessary to effectuate the purpose of the stop." *Id.* (citing *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985)).

Here, Bell was detained in the back seat of the locked squad car while the officers checked his driving and police records. When the checks came back clear, Homan wrote Bell a warning ticket for speeding. Homan then handed Bell the ticket. At that point, the reason for the initial traffic stop concluded and Bell would normally have been free to leave. We hold that the detention of Bell in the back seat of the squad car, while unnecessary for a petty misdemeanor traffic violation, was permissible up to the point the officers handed Bell the warning ticket.

The scope of the detention changed, however, when Homan asked Bell if he would consent to a search of his car. The issue at this point was whether Bell was still "seized" for purposes of the Fourth Amendment and Article I, Section 10. A person is seized when, considering the totality of the circumstances, an objectively reasonable person in the defendant's position would believe that he or she was neither free to terminate the encounter nor free to disregard the officer's questions. *State v. Cripps,* 533 N.W.2d 388, 391 (Minn.1995).

The state argues Bell understood he was free to leave when he signed the Minnesota State Patrol Consent Search Warning & Waiver Card, which informed him that he could refuse to give consent. Even though Bell may have been aware that he was free to withhold consent, he may not have felt free to terminate the encounter. Indeed, Bell was still locked in the back seat of the squad car when he was asked to give consent. Bell was frisked for weapons before he was placed in the squad car by two armed officers. Those officers were now both seated in the squad car with him. Moreover, the officers did not inform Bell that he was free to leave. Under these circumstances, we conclude an objectively reasonable person in Bell's position would have felt neither free to terminate the encounter nor free to disregard the officer's question. Bell was still seized when asked to give consent.

In order for the officers to justify Bell's continued detention, the officers

> must be able to articulate at the omnibus hearing that he or she had a particularized and objective basis for suspecting the seized person of criminal activity. An officer may make this assessment on the basis of all the circumstances and may draw inferences and deductions that might elude an untrained person. The officer, however, must be able to point to objective facts and may not base his or her conclusion on a "hunch."

*Id.* at 391–92 (citations omitted).

Here, the state argues that the officers had an articulable suspicion to justify keeping Bell detained after issuing the warning ticket. Homan testified he placed Bell in the back of the squad car for officer safety and because he thought Bell might be transporting illegal drugs. Homan testified the stop occurred late at night in an unfamiliar area. Homan testified he responded to a "shots fired" call a couple of days before in the same area. Homan testified that he saw a package of Philly Blunt cigars in Bell's car and that those cigars have been used to hide or mask marijuana. Homan also testified he smelled a strong cologne odor from Bell's car and that he thought the cologne could be a masking agent for drugs.

The officers' reasons, however, are significantly rebutted by their own testimony. The

officers testified they were not Minneapolis officers, but were in town for drug recognition evaluation school. Homan testified the courses were to teach the officers about the effects of driving under the influence of controlled substances. Homan testified they were looking for intoxicated drivers in connection with their training. Shingledecker testified they were in the certification part of the course and were out practicing at the time they stopped Bell.

Both officers testified that the traffic stop was routine, that Bell was cooperative throughout the stop, and that Bell did not exhibit signs of intoxication or other illegal drug use. Homan testified he did not feel any threat from Bell. Shingledecker testified he had never placed anyone in the back of a squad car during a routine traffic stop.

In response to questioning about the "shots fired" call, Homan testified that he did not know the location of the incident or how close it was to where Bell was stopped. Homan was unsure of the day he responded to the "shots fired" call; only that it occurred a "couple" of days beforehand. The state offered no evidence to show the area of the stop was dangerous or in a high crime neighborhood. Shingledecker testified that the situation was no more dangerous than any of the hundreds of stops he had previously made.

Homan agreed that upon seeing and smelling the cologne, it was "consistent with innocent use." Homan also testified he thought the cologne could be used as a masking agent, but there was no testimony that he had ever experienced or heard about such a use. There was no evidence to confirm the cologne smell came from the bottles or Bell, who had just left a supper club.

Homan testified that the package of cigars he saw was unopened and that he had no personal experience of their use with illegal drugs. Homan agreed that when he first saw the cigars, he did not see any indication of use inconsistent with innocent use.

The district court heard detailed testimony and made detailed findings. The district court was not persuaded by the officers' additional reasons for detaining Bell in the back of the locked squad car after they issued the warning ticket. Because the record supports the district court's conclusion that the seizure of Bell after issuing the ticket was based on an insupportable "hunch," we cannot say the district court was clearly and unequivocally wrong in suppressing the evidence.

■ 2. Even if the detention of Bell was somehow justified by articulable suspicion, there is still the issue of whether Bell voluntarily consented to the search of his car "without coercion or submission to an assertion of authority." *State v. Dezso*, 512 N.W.2d 877, 880 (Minn.1994) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973)). This inquiry requires the court to ask whether a reasonable person would have felt free to refuse the officer's request or free to terminate the encounter. *Id.* Where a warrantless search is conducted in violation of the Fourth Amendment and Article I, section 10, the State has the burden of proof to show that the search was with the defendant's voluntary consent. *Id.* Voluntariness is a question of fact and is based on the totality of the circumstances. *Bustamonte*, 412 U.S. at 248–49, 93 S.Ct. at 2059; *Dezso*, 512 N.W.2d at 880.

■ The State argues Bell's consent was voluntary because Bell signed the Minnesota State Patrol Consent Search Warning & Waiver card, which stated that Bell could refuse to allow the search. While the waiver card informed Bell he had a right to refuse consent, knowledge of the right to refuse is only one factor in the totality of the circumstances test. *See Bustamonte*, 412 U.S. at 227, 93 S.Ct. at 2047.

Here, Bell was stopped for a petty misdemeanor, but was frisked for weapons and placed in the back of a locked squad car by two armed officers. The officers sat in the front seat and asked for Bell's consent as they handed him a warning ticket. There was no interval between issuing the ticket and asking for consent. It is unlikely Bell could have terminated the encounter on his own even if he wanted to because the squad car doors were locked from the outside. We conclude a reasonable person would not have

felt free to refuse the officer's query or free to terminate the encounter.

█ Lastly, as discussed above, the officers had no reasonable articulable suspicion to support a search of the car. *See Dezso,* 512 N.W.2d at 881 (reasonable suspicion is "another circumstance that contributes to the nature of the encounter"). Under the totality of the circumstances in this case, we conclude the State did not carry its burden to show Bell's consent to search his car was voluntary. Consequently, the contents of the search must be suppressed.

## DECISION

The stop and initial detention of Bell in the squad car was permissible until the officers gave Bell the warning ticket. After that point, the officers did not have independent articulable suspicion to continue Bell's detention. The continued detention, therefore, was an illegal seizure that coerced Bell to give consent to search his car. Because the evidence found in the car was the consequence of an illegal seizure and Bell's consent was not voluntary, the district court properly suppressed the evidence.

**Affirmed.**