STATE of Minnesota, Appellant,

v.

Nate Baxter COMPTON, Respondent.

STATE of Minnesota, Plaintiff,

v.

Eugene Elmer COMPTON, Defendant.

Nos. 50950, 51067.

Supreme Court of Minnesota.

May 20, 1980.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., and Richard D. Hodsdon, Sp. Asst. Atty. Gen., St. Paul, Michael Milligan, County Atty., Walker, for appellant.

C. Paul Jones, Public Defender, Robert D. Goodell and Ronald Haskvitz, Asst. Public Defenders, Minneapolis, Jon Maturi, Grand Rapids, for Eugene Elmer Compton.

Paul Kief, Public Defender, Bemidji, for Nate Baxter Compton.

Considered and decided by the court en banc without oral argument.

SHERAN, Chief Justice.

These pretrial criminal appeals have been combined because the two prosecutions for concealing stolen property arose from the same incident and involve a similarity of facts and a relationship of issues. One (*State v. Nate Baxter Compton*, No. 50950) is an appeal by the state pursuant to R. 29.03, subd. 1, R.Crim.P., from an order of the district court suppressing evidence on Fourth Amendment grounds and dismissing the prosecution. The other (*State v. Eugene Elmer Compton*, No. 51067) involves a question certified pursuant to R. 29.02, subd. 4, R.Crim.P., by a different district court judge who, after a separate subsequent omnibus hearing, denied a motion to suppress; the issue in this appeal is whether the earlier ruling in the other case, if affirmed, operates to collaterally estop the state from relitigating the Fourth Amendment issue decided by that ruling. We reverse the suppression and dismissal orders in *State v. Nate Baxter Compton*, No. 50950, and remand for trial. This ruling renders moot the issue certified in *State v. Eugene Elmer Compton*, No. 51067, and accordingly we dismiss that appeal and remand for trial.

At approximately 4 a. m. on December 9, 1979, a deputy sheriff in Cass County stopped to help a motorist, whose old pickup truck was stopped on the side of the highway. His suspicions aroused by the driver's nervous response to his presence, the officer shined a spotlight on the back of the truck to illuminate the unlighted rear license plate so that he could run a license check. As he did this, the officer observed in open view a large number of new objects, many

in original store containers, piled in the rear box as if they were garbage. After the deputy called in the license number, he received a call from a Cass Lake police officer, who had seen the truck minutes earlier and had wanted to stop it but had not done so because of a prior existing investigation which was occupying his attention. Encouraged by this officer to stop the truck, the deputy did so, arresting the driver and passenger and then seizing some of the items to determine their source. After determining their source, a Bemidji store, he contacted Bemidji police, who checked and discovered that the store in question had been burglarized.

Because one of the defendants filed a motion to remove the judge who was to hear the suppression motion, the motions, although based upon basically the same evidence, were heard before different judges. One judge granted the suppression motion of defendant Nate Baxter Compton and the state appealed; the other judge denied the suppression motion of defendant Eugene Elmer Compton but, at defendant's request, certified the question of whether the other judge's ruling collaterally estopped the state from relitigating the Fourth Amendment issue decided by the previous ruling.

The leading Minnesota case dealing with the issue of what facts observed by a police officer give the officer probable cause to believe that property possessed by a person is stolen property is *State v. Lee*, 302 Minn. 382, 225 N.W.2d 14 (1975), a case in which the court reversed an order suppressing stolen property which was discovered and seized by an officer after stopping the driver of a station wagon at 4:15 a. m. in Roseville. The analysis of the facts and the law in that case is instructive:

The factors forming the basis for the officers' probable-cause assessment in this case included the following, each of which we believe either pointed to or was consistent with the conclusion that the tires and wheels were stolen property and therefore subject to seizure:

(a) The officer stopped defendant and made his observation at 4:15 a. m. This factor had some relevancy in that police know that tires are more commonly taken from automobiles at night than during the day.

(b) When asked what he was doing, defendant responded that he had been out all night drinking yet the police smelled no odor of liquor. The fact that the officer smelled no odor of liquor suggested that defendant was lying about having been out all night drinking and also that defendant possibly was trying to divert the officer's attention from some other matter.

(c) There were two relatively new white profile Cheetah tires, G70–14, mounted on mag wheels in the cargo area of defendant's station wagon. The tires and wheels did not fit defendant's station wagon. At the very least, this fact could arouse a prudent officer's suspicions.

(d) The tires were both mounted on wheels. We would assume that one who steals tires from cars usually takes the wheels also because it is simpler to do so.

(e) There was snow is the tire treads and finger marks on the wheels. This fits in with the theory that the wheels had recently been removed from some car.

(f) Defendant stated that he had purchased the two tires and wheels for only $15. This fact easily could have created strong suspicion in the officer's mind.

(g) Defendant did not know the name of the junkyard at which he had purchased the tires nor how long ago he had purchased them. This was a key fact suggesting to the officers that defendant lied when he said he had purchased the tires from a junkyard for $15 and giving strong support to any conclusion the officer had already formed that the tires were probably stolen.

(h) Defendant admitted that he had participated in the theft of a motorcycle and of motorcycle parts the previous year in Roseville. This fact alone would not justify the seizure but it was a relevant fact which the police could consider in making their probable-cause assessment.

See, *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *State v. Clifford*, 273 Minn. 249, 141 N.W.2d 124 (1966).

The police at the time of the seizure had not received any reports of the theft of two such tires. Had they received such a report, it would be clear that they had probable cause to seize. See, *State v. Rak*, 292 Minn. 434, 193 N.W.2d 603 (1971). However, the fact that they had not received such a report is not necessarily a fact to be weighed against the others because if the theft was recent, as the snow on the tires suggested, then it would be unlikely that such a report would have been made by then.

As we stated in *State v. Cox*, 294 Minn. 252, 256, 200 N.W.2d 305, 308 (1972):

" * * * [W]e must decide each case on its own facts, guided not by any magic formula but by the standard of reasonableness. In applying this standard we should not be overly technical and should accept the officer's probable-cause determination if reasonable and prudent men, not legal technicians, would under the same circumstances make the same determination."

If officers are ever to be permitted to preserve personal property they believe to be stolen, this is such a case. We believe that the officers in this case did have probable cause and that they did act reasonably.

There being probable cause to believe that the tires and wheels were stolen, the officers, even though they chose not to arrest defendant, had a right to seize the tires and wheels because they were easily disposable personal property.

See, *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). 302 Minn. 385, 225 N.W.2d 16.

*See also* 1 W. LaFave, *Search and Seizure*, § 3.6(a) (1978).

■ In this case the items apparently were recently obtained from a store, and the officer was justified in concluding that if the items were stolen, they were probably stolen in a burglary. Store burglaries usually occur at night. There were also many more items than are usually bought at one time by an individual or two individuals. Yet the items were being transported in an old dilapidated pickup truck which was not the type of truck one normally associates with a going business concern. Further, the items were not neatly stacked, as one would expect if the defendants had spent their own money on them, but were thrown in a pile, as one would do if one were burglarizing a store and wanted to take a lot of property but do it quickly. Also, the driver appeared nervous, was disinterested in talking with the officer, and acted suspiciously. Finally, although not of great importance, the suspicions of another officer were independently aroused by the same observations, a fact suggesting that the arresting officer's conclusions were not idiosyncratic.

■ Bearing in mind that we should not be overly technical but should accept the officer's on-the-scene probable-cause assessment if reasonable men would under the same circumstances make the same determination, we conclude that the officer did have probable cause and did act reasonably. Since the officer had probable cause to believe that the items were stolen, he was justified not only in arresting defendants but also in crossing the threshold (pursuant to the motor-vehicle exception to the warrant requirement) and seizing the items, as well as in searching the cab of the truck.[1]

1. Because of our holding we need not decide whether the facts would justify reliance on the inevitable-discovery exception to the exclusionary rule. In order to rely on the inevitable-discovery exception we would have to conclude (a) that if he had not arrested defendants, the deputy at least would have temporarily detained them while he conducted an on-the-scene temporary investigation, (b) that defendants had no reasonable expectation of privacy in the open box of the pickup, something left undecided in *State v. Yaeger*, 277 N.W.2d 405 (Minn.1979), (c) that accordingly probable cause was not needed to cross the threshold of the box and physically examine the items in open view, and (d) that therefore the deputy would have discovered more facts making it absolutely clear that the items were stolen property.

In view of our decision to reverse the suppression order in *State v. Nate Baxter Compton*, we do not reach the certified question in *State v. Eugene Elmer Compton*, a question which was dependent upon the validity of the suppression order in the other prosecution. We note, however, that the issue is discussed at 3 W. LaFave, *Search and Seizure*, § 11.2(g) at 535–537 (1978).

*State v. Nate Baxter Compton*, No. 50950, reversed and remanded; *State v. Eugene Elmer Compton*, No. 51067, dismissed and remanded.