**STATE of Minnesota, Respondent,**

v.

**Charles L. NADING, Appellant.**

**No. 81–889.**

Supreme Court of Minnesota.

June 4, 1982.

Lynch & Lynch and Michael Q. Lynch, Willmar, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and Barbara D. Gill, Sp. Asst. Attys. Gen., St. Paul, Robert Schreiner, County Atty., Ortonville, for respondent.

OTIS, Justice.

Defendant was found guilty by a district court jury of possession of burglary tools and burglary, and was sentenced by the trial court to a stayed 21-month prison term with the first six months of probation to be spent in jail. The court also ordered defendant to pay a $3,000 fine and to reimburse the county for his attorneys fees.

The issue on appeal is whether the arrest was illegal and requires that evidence seized thereafter be suppressed. We affirm.

On the evening of September 11, 1980, and early morning hours of September 12, 1980, Big Stone County law enforcement officers maintained surveillance on two out-of-state motor vehicles (a van and a Blazer) occupied by defendant and three other men. Information received from authorities in North Dakota and South Dakota indicated that the men in the vehicles were suspected of having participated in a number of recent burglaries and that their method of operation consisted of parking their vehicles at highway rest stops and then using motorcycles or dirt bikes to drive to the building to be burglarized. In one of the burglaries four handguns had been taken. It was thus believed that the four men might be armed and dangerous.

Around midnight the four men, in the two vehicles, were followed to a public access area of a lake northeast of Ortonville. At 1:45 a. m. the two motorcycles or dirt bikes were observed headed toward Ortonville but the surveillance officers lost sight of them. Then at 5:45 a. m. the officers observed all four men, on the two bikes, returning to. the public access area where the van and the Blazer were parked.

It was at this point that the sheriff, who was in charge of the surveillance, ordered his deputies to move in cautiously for the purpose of obtaining the identifications of the suspects and questioning them about their suspicious activities.

As the sheriff moved toward the van, which was some distance from the Blazer, two officers (who were soon backed up by two others) approached the Blazer and ordered the occupants to come out and lie down on the ground. Defendant and one Kenneth Williams emerged, defendant from the tailgate area, Williams from the front door on the driver's side. After the two were on the ground, a sheriff's deputy looked into the vehicle through the tailgate, which defendant had left open, and saw inside a new unused sledge hammer and a number of pairs of shoes. The sheriff joined the deputies at the Blazer and observed a punch and wet currency on the tailgate. Having learned from North Dakota and South Dakota authorities that the method of operation used by the burglars had been to buy new tools and new shoes for each burglary and leave them as they made their escape, the sheriff instructed his

men to arrest defendant and Williams for possession of burglary tools.

Later that morning it was learned that an Ortonville bowling alley had been burglarized. With a search warrant, the police obtained from the impounded vehicles evidence which they had observed, as well as other evidence.

The trial court denied defendant's motion to suppress the evidence as the fruit of an illegal arrest. Defendant was found guilty both of possessing burglary tools and participating in the burglary of the bowling alley.

We believe that the officers acted reasonably in requiring defendant and Williams to lie on the ground during the time their identified and suspicious conduct were being investigated.

As stated in 3 W. LaFave, *Search and Seizure* § 9.2(d) (1978 and Supp.1982), "A stopping for investigation is not a lesser intrusion, as compared to arrest, because the restriction on movement is incomplete, but rather because it is brief when compared with arrest." Thus, "under certain circumstances a police order that the suspect lie on the ground will be permissible." *Id.*, citing *People v. Chestnut*, 51 N.Y.2d 14, 431 N.Y.S.2d 485, 409 N.E.2d 958 (1980).

Here the officers had strong grounds for suspecting that the men in the van and the Blazer were burglars who may well have committed another crime. Although the officers did not know that the bowling alley had been broken into, they had sufficient grounds to temporarily detain the suspects. *State v. Compton*, 293 N.W.2d 372 (Minn. 1980); *State v. Lee*, 302 Minn. 382, 225 N.W.2d 14 (1975). The fact that defendant and Williams were ordered to lie on the ground does not mean they were under arrest. The officers had reason to believe they might be armed and dangerous and were entitled to take reasonable precautions.

In any event it seems clear that the officers would have seen the burglary tools whether or not appellant was detained, since the evidence which defendant claims should have been suppressed was in plain sight. *State v. Compton*, 293 N.W.2d 372, 375 n.1 (Minn.1980); *State v. Seefeldt*, 292 N.W.2d 558 (Minn.1980).

Affirmed.