STATE of Minnesota, Appellant,

v.

Charles Nelson CARVER, III, Respondent.

No. C4–97–1807.

Court of Appeals of Minnesota.

April 14, 1998.

Boyd Beccue, Kandiyohi County Attorney, Jennifer K. Fischer, Asst. County Attorney, Willmar, for appellant.

John E. Mack, Mack & Daby, New London, for respondent.

Considered and decided by SCHUMACHER, P.J., and HUSPENI and SHUMAKER, JJ.

## OPINION

HUSPENI, Judge.

Appellant State of Minnesota seeks reversal of the district court's decision to dismiss the driving under the influence charges against respondent Charles Nelson Carver, III, for an illegal arrest stemming from an incident where respondent was stopped for petty misdemeanor speeding and placed in handcuffs before the arresting deputy noticed any indicia of intoxication. Because we conclude that: (1) respondent was under arrest at the time he was placed in handcuffs; (2) speeding and parking a vehicle diagonally are not sufficient indicia of intoxication to create probable cause to arrest for driving under the influence; and (3) an officer may not lawfully arrest someone for the commission of a petty misdemeanor, we affirm.

## FACTS

On May 2, 1997, Kandiyohi County Deputy Mark Kitchenmaster observed respondent Charles Nelson Carver, III, drive past Kitchenmaster's marked patrol car at approximately 75 m.p.h. in a 55 m.p.h. zone. Kitchenmaster pursued respondent for approximately two miles and observed that respondent's vehicle "leaned quite a bit" as it made a turn, indicating to him that it was travelling faster than a safe speed. When Kitchenmaster activated his siren, respondent pulled his vehicle over so that it was pointing diagonally into the ditch along the roadway.

Kitchenmaster ordered respondent to get out of his vehicle and to assume the prone position on the road. He then approached respondent, handcuffed him, and escorted him back to the patrol car. Kitchenmaster testified that he took these precautions because of the way the vehicle went speeding past his marked car without slowing down, because it was not clear to Kitchenmaster "why [respondent] was driving like that," and because he did not know the location of the nearest backup. When initially talking to respondent, Kitchenmaster noticed a strong odor of alcohol. The district court determined, however, that "the testimony presented at the evidentiary hearing did not establish at what point during the sequence of events, the Deputy detected the smell of alcohol on [respondent's] breath."

Once inside the patrol car, Kitchenmaster observed that respondent had bloodshot and watery eyes. Without performing any field sobriety tests, Kitchenmaster asked respondent to submit to a preliminary breathalyzer test. Respondent took the test and failed. Kitchenmaster then informed respondent that he was under arrest for driving under the influence of alcohol.

After a suppression hearing, the district court found that Kitchenmaster was justified in stopping respondent's vehicle based on his observations of speeding, but held that there was no probable cause to arrest respondent. The court reasoned that probable cause did not exist because there was insufficient evidence as to when Kitchenmaster smelled alcohol on respondent's breath, and because all

other purported indicia of intoxication, except for the diagonal parking of respondent's car, were obtained after respondent had been handcuffed and placed under arrest. As a result, the court suppressed the evidence taken subsequent to the arrest and dismissed the charges.

## ISSUES

1. Did the district court err in finding that respondent was under arrest when he was ordered to assume the prone position on the roadway and was handcuffed?

2. Did the district court err in finding that Kitchenmaster lacked sufficient justification

   a. To arrest respondent for driving while intoxicated?

   b. To arrest respondent for speeding?

## ANALYSIS

[W]hen reviewing a pre-trial order suppressing evidence where the facts are not in dispute and the trial court's decision is a question of law, the reviewing court may independently review the facts and determine, as a matter of law, whether the evidence need be suppressed.

*State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992) (citations omitted). This court will reverse a pretrial decision to suppress evidence only if "the State demonstrates clearly and unequivocally that the trial court has erred in its judgment" and that the error will have a "critical impact on the outcome of the trial." *Id.* (citation omitted).

### 1. Arrest

Appellant State of Minnesota argues that respondent was not under arrest when he was ordered to assume the prone position on the roadway and handcuffed, and that the officer acted properly within the confines of an investigative stop in accordance with *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The ultimate test to be used in determining whether a suspect was under arrest is whether a reasonable person would have concluded, under the circumstances, that he was under arrest and not free to go.

*State v. Beckman,* 354 N.W.2d 432, 436 (Minn.1984) (citing *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). "An arrest takes place when officers restrain a suspect's liberty of movement." *State v. Lohnes,* 344 N.W.2d 605, 610 (Minn. 1984). Ordering a suspect to lie on the ground does not mean that the suspect is under arrest. *See State v. Nading,* 320 N.W.2d 82, 84 (Minn.1982) (holding that police officers acted reasonably in ordering suspects to the ground because of "identified and suspicious conduct" that gave them strong grounds for believing a crime had been committed).

Kitchenmaster's actions in this case went beyond those found to be appropriate in *Nading.* Kitchenmaster handcuffed respondent. This final step sufficiently restrained freedom of movement so as to give a reasonable person the belief that he was not free to go. As a result, we conclude that respondent was under arrest at the time he was placed in handcuffs. *See State v. Blacksten,* 507 N.W.2d 842, 847 (Minn.1993) (holding that the defendant "was de facto under arrest from the time he was ordered to the ground at gunpoint, handcuffed, and placed in the squad car.").

**2. Justification for arrest**

■ Appellant argues that even if respondent was under arrest when he was handcuffed, Kitchenmaster had two legitimate reasons for arresting respondent: (1) probable cause that respondent was driving while under the influence of alcohol; and (2) the in-presence petty misdemeanor of speeding. We believe that neither of these bases supports the arrest of respondent.

> The test of probable cause to arrest is whether the objective facts are such that under the circumstances a person of ordinary care and prudence would entertain an honest and strong suspicion that a crime has been committed.

*State v. Wynne,* 552 N.W.2d 218, 221 (Minn. 1996) (citations and quotation omitted).

**a. Driving while intoxicated**

■ "An officer needs only one objective indication of intoxication to constitute probable cause to believe a person is under the influence." *Heuton v. Commissioner of Pub. Safety,* 541 N.W.2d 361, 363 (Minn.App.1995) (holding that probable cause existed to activate the implied consent law where the police detected the smell of alcohol on the victim of a one-car accident).

Appellant argues that the indicia of driving while intoxicated include respondent's pulling his car over so that the front end was pointing toward the ditch, Kitchenmaster's smelling alcohol on respondent's breath, and Kitchenmaster's observing respondent's bloodshot and watery eyes once inside the patrol car. As a preliminary matter, we note that unquestionably Kitchenmaster's observance of bloodshot and watery eyes occurred subsequent to respondent's arrest and cannot be used as justification for that arrest.

On the question of when Kitchenmaster smelled alcohol on respondent's breath, we must defer to the credibility determination of the district court, which held that testimony did not establish when Kitchenmaster smelled alcohol on respondent's breath. However, the district court stated that Kitchenmaster's testimony "supports the conclusion that the officer did not smell the odor of alcohol * * * until after [respondent] was arrested."[1] This finding of fact can only be reversed if it is clearly erroneous. Minn. R. Civ. P. 52.01. In describing the sequence of events, Kitchenmaster testified:

> When I initially—after I stopped his vehicle, he was ordered out of his vehicle and was ordered to prone out on North Shore Drive or on the roadway, *and then I approached and handcuffed him* and then escorted him back to the patrol car.

(Emphasis added.) This testimony indicates that Kitchenmaster did not get near respondent until he had handcuffed him; the conclusion is consistent with Kitchenmaster's statement that he was acting out of concern for his own safety. The district court's hold-

---

1. The district court also found that respondent was under arrest at the time that he was placed in handcuffs.

ing that the smell of alcohol did not come until after the arrest was not clearly erroneous.

Lastly, appellant notes that respondent parked his car so that it was pointing at an angle towards the ditch. This manner of parking, even if it could be considered suspect, is insufficient to give a reasonable person an "honest and strong suspicion" that a crime has been committed.

Kitchenmaster followed respondent at a high rate of speed for two miles, but did not observe respondent cross the center line or otherwise drive erratically. Once stopped, Kitchenmaster noticed that respondent parked his car so that it was pointing at an angle toward the ditch. These facts give no indication that Kitchenmaster had probable cause to arrest respondent for driving while intoxicated.

### b. Speeding

■ In the alternative, appellant asserts that by speeding past Kitchenmaster's car, respondent violated Minn.Stat. § 169.14, subd. 1 (1996), in Kitchenmaster's presence, justifying an arrest according to Minn.Stat. § 629.34, subd. 1(c)(1) (1996) (permitting a peace officer to make an arrest without a warrant "[w]hen a public offense has been committed or attempted in the officer's * * * presence.").

Speeding is a petty misdemeanor unless it is "committed in a manner or under circumstances so as to endanger or be likely to endanger any person or property." Minn. Stat. § 169.89, subd. 1 (1996). Appellant conceded at oral argument that respondent's conduct qualified only as petty misdemeanor speeding. Therefore, we need to decide whether it was lawful to arrest respondent for the commission of a petty misdemeanor.

The propriety of an arrest for a petty misdemeanor is somewhat unclear due to seemingly contradictory interpretations of Minn. R.Crim. P. 6.01 and Minn.Stat. § 629.34.

> Law enforcement officers acting without a warrant, * * * **shall issue citations to persons subject to lawful arrest for mis-**

**demeanors,** unless it reasonably appears to the officer that arrest or detention is necessary to prevent bodily harm to the accused or another or further criminal conduct, or that there is a substantial likelihood that the accused will fail to respond to a citation.

Minn. R.Crim. P. 6.01, subd. 1(1)(a) (emphasis added). In *State v. Martin*, 253 N.W.2d 404 (Minn.1977), the Minnesota Supreme Court interpreted rule 6.01 to mean that "an officer ordinarily may not arrest a person without a warrant for a petty misdemeanor." *Id.* at 406 (holding that an arrest for possession of marijuana was illegal because possession was a petty misdemeanor); *see also State v. Hanson*, 364 N.W.2d 786, 789 (Minn. 1985) (holding that possession of a single marijuana cigarette is a petty misdemeanor which ordinarily does not justify custodial arrest).

In apparent contradiction to *Martin* and Minn. R.Crim. P. 6.01, *State v. Sellers*, 350 N.W.2d 460 (Minn.App.1984), held that a "public offense" for the purposes of Minn. Stat. § 629.34, subd. 1, must be interpreted to include petty misdemeanors. *Id.* at 462. In *Sellers*, a Wisconsin police officer pursued a driver across state lines and arrested him for aggravated driving after observing the defendant spin his wheels, drive at 70 m.p.h., fishtail, go through a stop sign at 35 m.p.h., and cross the center line twice. In response to defendant's argument that spinning tires is only a petty misdemeanor and therefore could not justify an arrest, the court relied on *State v. Cantieny*, 34 Minn. 1, 9, 24 N.W. 458, 462 (1885) (defining offense as a "breach of the laws established for the protection of the public"), and Minn.Stat. § 609.02, subd. 4a (1982)[2] (defining "petty misdemeanor" as a "petty offense" that is not a crime), to hold that a petty misdemeanor is a public offense.

Two factors weaken the precedential value of the *Sellers* decision. First, it mentions neither *Martin* nor Minn. R.Crim. P. 6.01. Instead, *Sellers* relies on language from a nineteenth-century case and on the use of the word "offense" in the statutory definition of "petty misdemeanor." Secondly, the court in

---

2. This statute is still in effect.

*Sellers* held that the facts of that case "show[ed] adequate grounds for misdemeanor arrest" by speeding, crossing over the center line, running a stop sign, and fishtailing. *Id.* at 462. Thus, the ultimate decision in *Sellers*, i.e., that there were adequate grounds for an arrest, could be justified as easily by the determination that a misdemeanor had been committed in the presence of the officer as grounds that it is permissible to arrest for a petty misdemeanor.

■ We conclude that, even though *Martin* renders its decision based on the rules of criminal procedure rather than on Minn.Stat. § 629.34, subd. 1 (1996),[3] the supreme court's overarching principle is clear and must be upheld by this court: an officer may not make a custodial arrest based only on a petty misdemeanor. As a result, we affirm the district court's conclusion that Kitchenmaster was not justified in arresting respondent because there was insufficient probable cause to support an arrest for driving under the influence.[4]

■ Appellant next argues that, even if the officer did not have probable cause to arrest respondent, the district court erred in holding that the breathalyzer and Intoxilyzer results were inadmissible fruits of an illegal arrest. Appellant argues that the indicia of intoxication and respondent's consent to the breathalyzer test once inside the squad car demonstrate that the evidence was not subject to the exclusionary rule. Case law, however, does not appear to support appellant's position.

In *State v. Warndahl,* 436 N.W.2d 770 (Minn.1989), the supreme court considered several factors in determining whether evidence should be excluded as "fruit of the

poisonous tree," including the purpose and flagrancy of the officer's misconduct, the presence of intervening circumstances, the likelihood that the evidence would have been obtained in the absence of the illegality, and the temporal proximity of the illegality to the evidence excluded. *Id.* at 776. The Supreme Court, in addressing application of the exclusionary rule, has stated:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made ***has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.***

*Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963) (citation and quotation omitted) (emphasis added), *quoted in Warndahl,* 436 N.W.2d at 775–76.

Addressing these considerations in terms of the evidence to be excluded, we believe that the illegal arrest is so closely tied to the observance of the indicia of intoxication and the obtaining of the intoxication test results that it cannot "be purged of the primary taint." As the district court noted, because the evidence presented did not show when Kitchenmaster smelled the alcohol on respondent's breath, we can only assume that the smell of alcohol did not come until after respondent was arrested. We believe that the indicia of intoxication and the subsequent intoxication test results were obtained in such close proximity to Kitchenmaster's ille-

---

**3.** *See State v. Keith,* 325 N.W.2d 641, 642 (Minn. 1982), holding:

> [I]n matters of procedure rather than of substance the Rules of Criminal Procedure take precedence over statutes to the extent that there is any inconsistency.

Though there is no apparent contradiction between Minn. R.Crim. P. 6.01 and Minn.Stat. § 629.34, subd. 1, the overlapping subject matter of the two provisions may explain why the supreme court relied only on rule 6.01 in *Martin.*

**4.** We note that the facts indicate that Kitchenmaster placed respondent in handcuffs out of

concern for officer safety. While we recognize that personal safety is an important consideration for a peace officer in dealing with suspected criminals, we do not believe that the circumstances of this case indicate a situation so threatening as to remove it from the ordinary circumstances under which an officer may not arrest a suspect for a petty misdemeanor. This position is supported by the fact that appellant does not rely on officer safety as justification for this arrest, choosing only to rely on respondent's speeding and the indicia of intoxication.

gal conduct that they are indistinguishable from it. *See State v. Hardy,* 577 N.W.2d 212, 216 (Minn.1998) (holding that a request by police that the defendant open his mouth was an illegal search and excluding the contents of the defendant's mouth because the search caused the events which eventually led to obtaining the evidence). In addition, the likelihood that this evidence would have been obtained absent Kitchenmaster's illegal conduct is not substantial.[5] We conclude that the district court did not err in suppressing the breathalyzer and Intoxilyzer evidence as the fruit of the poisonous tree.

Finally, we find no merit in appellant's argument that respondent's consent to take the breathalyzer test negates application of the poisonous fruit doctrine. As appellant recognized in its brief, a lawful arrest is necessary before a person can be required to submit to chemical testing. *See Henry v. Commissioner Pub. Safety,* 357 N.W.2d 121, 122 (Minn.App.1984). In view of our determination that the arrest in this case was unlawful, we cannot legitimize the tests on the basis of respondent's consent.

### DECISION

Because handcuffing someone restrains liberty of movement and gives reasonable persons the belief that they are not free to go, respondent was under arrest at the time that he was placed in handcuffs. Respondent was illegally arrested for the commission of a petty misdemeanor. There were no indicia of intoxication until after the arrest. The district court did not err in suppressing the evidence taken subsequent to the arrest and in dismissing the charges.

**Affirmed.**

5. Appellant has not argued a theory of inevitable discovery, and we do not address it.