**STATE of Minnesota, Respondent,**

v.

**Michael Tibor VEREB, Appellant.**

**No. C8-01-1055.**

Court of Appeals of Minnesota.

May 7, 2002.

---

Mike Hatch, Attorney General, John B. Galus, Assistant Attorney General, Caia Johnson, Certified Student Attorney, St. Paul, MN; and Conrad I. Freeberg, Morrison County Attorney, Little Falls, MN, for respondent.

Daniel S. Adkins, Richard Sand Associates, P.A., St. Paul, MN, for appellant.

Considered and decided by LANSING, Presiding Judge, KLAPHAKE, Judge, and HUSPENI, Judge.*

## O P I N I O N

KLAPHAKE, Judge.

After the district court denied his pretrial suppression motion, appellant entered

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

into a Lothenbach stipulation and, based upon the police reports, was found guilty by the court of conspiracy to manufacture methamphetamine, a first-degree controlled substance crime, and possession of more than six grams of methamphetamine, a second-degree controlled substance crime. Minn.Stat. §§ 152.021, subd. 2a, .022, subd. 2(1), .96, subd. 1 (2000).[1] Pursuant to the parties' agreement, the district court merged the two counts for sentencing and imposed a 72-month sentence, which represents a departure from the presumptive 86-month sentence set out in the guidelines for a person with a zero criminal history score who commits a severity level VIII offense. *See* Minn. Sentencing Guidelines IV (grid).

On appeal, appellant challenges the legality of the initial stop of the vehicle in which he was riding and his warrantless arrest. Because there was a reasonable articulable basis for the stop and probable cause to arrest appellant, we affirm.

### FACTS

On October 18, 2000, Little Falls Police Chief Michael Pender received a telephone call from a Wal–Mart employee. The employee reported that two individuals, whom police later identified as Shane Allen Saarela and appellant Michael Tibor Vereb, had just purchased a large quantity of cold tablets. The employee also reported that the two men had made several trips into the store to purchase the cold tablets. Chief Pender knew from his training and experience that cold medicine usually contains ephedrine or pseudoephedrine, which are common precursor ingredients used to manufacture methamphetamine.

When Chief Pender arrived at the store, an employee met him and stated that the men had just left in a vehicle. Because the employee knew which way the vehicle was traveling, he accompanied Chief Pender to search for the vehicle. The employee sighted the vehicle and Chief Pender attempted to follow it, but its speed soon exceeded 75 miles per hour and it began to pull away. Chief Pender requested backup from the state patrol, and State Trooper Eugene Okerlund responded and stopped the vehicle.

Saarela, the driver, did not have a driver's license with him and was unable to produce other identification, but claimed that his name was "Thomas Oscar Strandlien." Appellant also failed to produce identification and, according to Chief Pender, was initially "reluctant" to give his name. Neither party could produce any insurance information on the vehicle.

According to Chief Pender's report, appellant appeared confused and evasive during questioning. Appellant initially offered no explanation as to why he had purchased a large quantity of cold tablets or why he and Saarela had attempted to evade the officers. Appellant explained that the vehicle belonged to his girlfriend, and he consented to its search. In the trunk, Chief Pender found a number of plastic bags containing more than 30 boxes of cold tablets and several packages of "AA" lithium batteries, which are also known to be used in the manufacture of methamphetamine. Appellant told Chief Pender that he had a head cold and that

1. At the plea and sentencing hearing, the parties agreed to correct the statutory citation in Count I of the complaint, which charged appellant with conspiracy to commit a first-degree controlled substance crime, from Minn.Stat. § 152.021, subd. 2(a), which involves possession of a controlled substance, to Minn.Stat. § 152.021, subd. 2a, which makes it a crime to manufacture any amount of methamphetamine. Count II of the complaint remained unchanged and charged appellant with second-degree possession of a controlled substance under Minn.Stat. § 152.022, subd. 2(1).

the cold tablets were his, but then told Chief Pender that the cold tablets were for a friend. When asked if he had any illegal drugs or money, appellant admitted that he had money for "supplies." From his pockets, he produced $570 in cash and two cash register receipts from Wal–Mart. The receipts included purchases of cold tablets and batteries.

Appellant and Saarela were taken to police headquarters for further questioning by drug task force agents, and the vehicle was towed. Both men were given Miranda warnings prior to questioning. Saarela waived his right to an attorney and agreed to questioning; appellant stated that he understood his rights but did not wish to speak with agents. Approximately two hours and 15 minutes after the initial stop, appellant was formally placed under arrest for conspiracy to manufacture methamphetamine.

During booking, appellant was asked to change clothes. While picking up appellant's clothes, police found two plastic baggies and a black pouch, each of which contained a white powdery substance. The substance was later tested and proved to contain approximately 20 grams of methamphetamine.

## ISSUES

1. Was there reasonable articulable suspicion to stop the vehicle in which appellant was riding?

2. Was there probable cause to support appellant's warrantless arrest for conspiracy to manufacture methamphetamine?

## ANALYSIS

■ "When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." State v. Har-ris, 590 N.W.2d 90, 98 (Minn.1999) (citation omitted). On issues involving the legality of a limited investigatory stop, an appellate court reviews the district court's determination of reasonable suspicion de novo and its findings of fact for "clear error." State v. Britton, 604 N.W.2d 84, 87 (Minn.2000). When determining whether probable cause exists to make a warrantless arrest, an appellate court "independently reviews the facts to determine the reasonableness of the conduct of police." State v. Riley, 568 N.W.2d 518, 523 (Minn.1997) (citation omitted).

## I.

Appellant first challenges the legality of the stop of the vehicle in which he was riding. He argues that police lacked probable cause to stop it because the mere report that he had purchased cold tablets was insufficient to provide reasonable suspicion that appellant had committed a crime or was about to commit a crime.

■ An investigatory stop requires only reasonable suspicion of criminal activity, not probable cause. State v. Pike, 551 N.W.2d 919, 921 (Minn.1996) (citing Terry v. Ohio, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). Limited investigatory stops are allowed if police have a reasonable articulable suspicion of a motor vehicle violation or of criminal activity. Id. The stop must be based on more than a "hunch" and cannot be the "product of mere whim, caprice or idle curiosity." State v. George, 557 N.W.2d 575, 578 (Minn.1997); Pike, 551 N.W.2d at 921.

■ An officer need not personally observe facts to establish reasonable articulable suspicion and may rely on facts provided by a third person. Marben v. State, Dep't of Pub. Safety, 294 N.W.2d 697, 699 (Minn.1980). Reasonable articulable suspicion may be based on an infor-

mant's tip if police know enough about the informant to believe he or she is credible and the information given to police appears to have some factual basis. *See State v. Davis*, 393 N.W.2d 179, 181 (Minn. 1986) (informant's face-to-face report of traffic violation justified stop). Direct contact between an informant and an officer enhances an informant's credibility, because an informant can be held accountable for any false information. *In re Welfare of G.M.*, 560 N.W.2d 687, 691 (Minn. 1997) (citing *Davis*, 393 N.W.2d at 181).

■ Here, we conclude that police had reasonable suspicion of criminal activity to support the stop of the vehicle, based on the following facts: (1) Chief Pender received a report from a Wal–Mart employee who observed two men purchasing a large number of cold tablets; (2) Chief Pender knew that cold tablets are precursor materials commonly used in the production of methamphetamine; (3) when Chief Pender arrived at the store, an employee met him and told him that the men had just left in a vehicle; (4) the employee observed the direction the vehicle had traveled and rode along with Chief Pender to search for the vehicle; and (5) Chief Pender observed the vehicle attempting to evade his pursuit by traveling at excessive speeds.

The speeding violation and evasive driving conduct alone justified the stop. *See State v. Fiebke*, 554 N.W.2d 755, 756–57 (Minn.App.1996). These facts, coupled with appellant's and Saarvela's other suspicious conduct at the store, provided a reasonable articulable basis to stop the vehicle to investigate a possible traffic or controlled substance violation. *See State v. Brown*, 345 N.W.2d 233, 237 (Minn.1984) (police had right and duty to respond to and investigate report of suspicious activity); *see also State v. Johnson*, 444 N.W.2d 824, 827 (Minn.1989) (driver's evasive conduct provided articulable suspicion of crim-

inal activity to warrant stop). We therefore conclude that the stop was lawful.

**II.**

■ Appellant next challenges the basis for his warrantless arrest for conspiracy to manufacture methamphetamine. He argues that his legitimate possession of cold tablets and batteries does not establish probable cause to arrest him merely because those items are precursor materials used to manufacture methamphetamine.

■ An investigative detention following a lawful stop may last only "as long as reasonably necessary to effectuate the purpose of the stop." *State v. Blacksten*, 507 N.W.2d 842, 846 (Minn.1993) (citation omitted). Although police did not formally arrest appellant until after they had detained and transported him to police headquarters, we conclude that once he believed he was not free to leave, his continued detention became a "de facto" arrest requiring probable cause. *See id.* at 847 (arrest occurs when defendant handcuffed, placed in squad car, and not free to leave); *State v. Carver*, 577 N.W.2d 245, 247 (Minn.App.1998) (arrest occurs when reasonable person would feel he was under arrest and not free to leave). Even a "de facto" arrest, however, is legal if supported by probable cause. *Id.*

■ Probable cause exists when police have facts and circumstances that would warrant a prudent person in the officer's position to reasonably conclude that the person committed a crime. *G.M.*, 560 N.W.2d at 695; *see also United States v. Hartje*, 251 F.3d 771, 775 (8th Cir.2001) (probable cause exists "when at the moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person

that an offense has been or is being committed"). "While probable cause requires something more than mere suspicion [of criminal activity], it requires less than the evidence necessary for conviction." *State v. Horner*, 617 N.W.2d 789, 796 (Minn. 2000).

To determine if probable cause exists to make a warrantless arrest, a court must look to the "information that police took into consideration when making the arrest, not what they uncovered thereafter." [2] *State v. Walker*, 584 N.W.2d 763, 766 (Minn.1998). The existence of probable cause is examined under the "totality of the circumstances" test. *State v. McCloskey*, 453 N.W.2d 700, 702–03 (Minn. 1990).

Appellant argues there was insufficient evidence to arrest him for conspiracy to manufacture methamphetamine because there was no evidence of any agreement between him and Saarela to commit the crime. Conspiracy requires an agreement with another to commit a crime and an overt act in furtherance of the agreement. Minn.Stat. § 609.175, subd. 2 (2000). A conspiracy need not be established by direct evidence, but can be inferred from the circumstances. *State v. Hatfield*, 639 N.W.2d 372, 376 (Minn. 2002); *State v. Watson*, 433 N.W.2d 110, 114–15 (Minn.App.1988), *review denied* (Minn. Feb. 10, 1989).

Here, the overt act requirement was satisfied by the purchase of a large quantity of cold tablets and batteries by appellant and Saarela. In addition, police had other circumstantial evidence from which they could infer, for purposes of probable cause, that appellant and Saarela had entered into some type of agreement to participate in a crime, as follows: (1) police knew at the time of appellant's arrest that he and Saarela had entered the Wal–Mart store several times to purchase a large quantity of cold tablets and lithium batteries, which are precursor materials used to manufacture methamphetamine; (2) police observed evasive driving conduct on Saarela's part; (3) appellant appeared confused and evasive when questioned; (4) neither appellant nor Saarela could produce identification; and (5) appellant produced $570 in cash from his pockets, which he claimed was for "supplies."

While these facts alone might not justify a conviction, they are sufficient to "lead a person of ordinary care and prudence to entertain an honest and strong suspicion that the person under consideration is guilty of a crime." *State v. Carlson*, 267 N.W.2d 170, 173–74 (Minn.1978). We therefore conclude that because police could reasonably infer that appellant and Saarela had a plan or agreement to manufacture methamphetamine, the evidence

---

2. Following appellant's de facto arrest, police uncovered other evidence from the vehicle, including two more cash register receipts from Wal–Mart, dated October 17, 2000, the previous day. Police also discovered that Saarela had given them a false name when he was initially stopped, because they found his driver's license in the vehicle. Further, in response to questioning at headquarters, Saarela admitted that appellant had handed him $20 to purchase two boxes of cold tablets, but claimed that he did not know what methamphetamine was and had no knowledge that cold tablets and lithium batteries

were items used to manufacture methamphetamine. Saarela later admitted that "it was possible that [he] had purchased three boxes instead of two." When Chief Pender spoke again with the employee at Wal–Mart, however, he learned that Saarela purchased six boxes of cold tablets and that appellant purchased six packages of batteries and nine boxes of assorted cold tablets. This evidence may support appellant's eventual conviction, but we do not consider it in determining whether probable cause existed to support appellant's arrest.

was sufficient to provide probable cause for appellant's warrantless arrest.

Finally, we recognize that the supreme court recently affirmed this court's reversal of a conviction for conspiracy to manufacture methamphetamine on sufficiency of the evidence grounds. *Hatfield,* 639 N.W.2d at 377 (insufficient evidence of an agreement necessary for a conspiracy, where co-conspirator testified that he did not know anything about the manufacture of methamphetamine and did not know that anhydrous ammonia was in either a propane tank or in a red cooler that the defendant had asked him to bring to his garage). As we have already noted, however, there is a substantial difference between sufficiency of the evidence to support probable cause for an arrest, which is the issue here, and sufficiency of the evidence to support a conviction, which was the issue in *Hatfield. See Horner,* 617 N.W.2d at 796.

In addition, the issue regarding sufficiency of the evidence to support the conviction was not raised below or addressed by the district court, nor has appellant specifically raised or briefed this issue on appeal. We decline to sua sponte determine whether the evidence was sufficient to support appellant's conviction for conspiracy to manufacture methamphetamine. *Cf. State v. Pinkerton,* 628 N.W.2d 159, 161–62 (Minn.App.2001) (noting that while "this court will not decide an issue that was not raised" below, we "may deviate from this rule when (1) the interests of justice require consideration of an issue and (2) consideration would not unfairly surprise a party to the appeal"), *review denied* (Minn. July 24, 2001); *State v. Clow,* 600 N.W.2d 724, 726–27 (Minn.App. 1999) (same), *review denied* (Minn. Oct. 21, 1999).

## DECISION

The district court did not err in determining that police had reasonable articulable suspicion of criminal activity to justify a stop of the vehicle in which appellant was riding. The district court also did not err in concluding that, after further investigation, police had probable cause to arrest appellant for conspiracy to manufacture methamphetamine. The evidence was sufficient to show, for purposes of establishing probable cause, that appellant and Saarela had an agreement to commit a crime and acted in furtherance of that agreement. We therefore affirm the district court's decision denying appellant's suppression motion.

**Affirmed.**