*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2125**

State of Minnesota,
Respondent,

vs.

Bryan Anthony Hartshorn,
Appellant.

**Filed August 17, 2015
Affirmed
Worke, Judge
Dissenting, Smith, Judge**

Ramsey County District Court
File Nos. 62SU-CR-13-1221 and 62-CV-13-3183

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Patrick Kelly, Little Canada City Attorney, Martin H.R. Norder, Assistant City Attorney, Joseph A. Kelly, Assistant City Attorney, Kelly & Lemmons, P.A., St. Paul, Minnesota (for respondent)

Brian P. Karalus, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Bjorkman, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges his conviction for driving while intoxicated, arguing that the sheriff's deputy lacked a reasonable, articulable basis to support expansion of his traffic stop. We affirm.

## FACTS

Shortly after midnight on April 4, 2013, a deputy sheriff observed appellant Bryan Anthony Hartshorn traveling 62 miles per hour in an area with a posted speed limit of 35 miles per hour. The deputy stopped Hartshorn and asked him if he knew why he had been stopped. Hartshorn said he did not know. While talking to Hartshorn, the deputy observed that "his eyes were red and watery" and noticed that Hartshorn "was smoking a large cigar." The deputy did not smell the odor of alcoholic beverages, but believed this could be because of the overpowering smell of the cigar. The deputy believed that Hartshorn was under the influence of something.

The deputy asked Hartshorn if he had consumed any alcohol that evening, and Hartshorn denied it. Hartshorn also denied using any medications or drugs. The deputy performed a horizontal gaze nystagmus test on Hartshorn and observed signs of intoxication. The deputy performed a record check and discovered that Hartshorn had one prior conviction for driving while under the influence of drugs.

The deputy then performed a second horizontal gaze nystagmus test, again observing signs of impairment. Hartshorn was able to perform the one-leg-stand test, but

showed signs of impairment in the walk-and-turn test. The deputy administered a preliminary breath test on Hartshorn, which indicated a .10 blood-alcohol concentration. After arresting Hartshorn for DWI, the deputy performed a breath test which yielded a result indicating a .11 blood-alcohol concentration.

The state charged Hartshorn with third-degree DWI. Hartshorn moved the district court to suppress the evidence obtained during the traffic stop, arguing that the deputy had "no reasonable basis for the continued detention of [Hartshorn] after the purpose of the traffic stop was completed."[1] The district court denied the motion, ruling that Hartshorn's bloodshot and watery eyes established a reasonable suspicion that he was impaired.

Hartshorn stipulated to the prosecution's case, under Minn. R. Crim. P. 26.01, subd. 4, to preserve the pretrial ruling for appeal. The district court found him guilty.

### D E C I S I O N

Hartshorn concedes that the initial stop was justified, but contends that the officer expanded the scope of the stop without a reasonable, articulable basis. A police officer may stop a motor vehicle to investigate "when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quotation omitted). The scope of the investigation must be limited to the reason for the stop unless the officer develops reasonable, articulable suspicion of another

---

[1] In support of the suppression motion, Hartshorn submitted the deputy's written incident report. No testimony or other evidence was submitted to the district court in connection with the motion.

3

criminal offense. *State v. Diede*, 795 N.W.2d 836, 845 (Minn. 2011). "[W]e review de novo whether the stipulated facts were sufficient to provide the officer with a reasonable, articulable suspicion" to expand the scope of the investigatory stop. *See State v. Lemert*, 843 N.W.2d 227, 231 (Minn. 2014).

We look to the totality of the circumstances to determine whether a reasonable, articulable suspicion existed. *State v. Martinson*, 581 N.W.2d 846, 852 (Minn. 1998). The totality of the circumstances "include[s] the officer's general knowledge and experience, the officer's personal observations, information the officer has received from other sources, the nature of the offense suspected, the time, the location, and anything else that is relevant." *Appelgate v. Comm'r of Pub. Safety*, 402 N.W.2d 106, 108 (Minn. 1987). We have previously held that "an officer need only have one objective indication of intoxication to constitute [probable cause] to believe a person is under the influence." *See Holtz v. Comm'r of Pub. Safety,* 340 N.W.2d 363, 365 (Minn. App. 1983). Bloodshot, watery eyes are a common indicator of intoxication. *See, e.g.*, *State v. Bernard*, 859 N.W.2d 762, 764 (Minn. 2015), *appeal docketed* (U.S. June 16, 2015); *State v. Fleck*, 777 N.W.2d 233, 235 (Minn. 2010).

Hartshorn cites several cases involving illegal expansion of traffic stops to support his argument that red and watery eyes are insufficient indicia of intoxication. But he fails to cite any legal authority to support his position that the presence of one common,

objective indicator of intoxication is insufficient to establish reasonable, articulable suspicion to expand the scope of a traffic stop to investigate possible impaired driving.[2]

The totality of the circumstances supports the district court's conclusion that the deputy had a reasonable, articulable suspicion that Hartshorn was under the influence. In addition to the officer's observation of Hartshorn's bloodshot, watery eyes, the totality of the circumstances include the lateness of the hour, Hartshorn's driving conduct, and his admitted lack of awareness as to his driving conduct prior to the stop. These facts meet the minimal standard needed to expand the traffic stop to investigate possible intoxication. *See State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006) (noting that "the reasonable suspicion showing is not high" (quotation omitted)). Accordingly, we affirm the denial of Hartshorn's suppression motion and his conviction for driving while intoxicated.

Hartshorn's argument that his bloodshot and watery eyes do not provide a sufficient basis to expand the traffic stop because there may be an innocent explanation is misplaced. As we noted above, Hartshorn is unable to cite a single case holding that a peace officer's observation of a single, common indicator of intoxication is insufficient for reasonable suspicion. More importantly, "reasonable suspicion need not rule out the possibility of innocent conduct." *Navarette v. California*, 134 S. Ct. 1683, 1686 (2014)

---

[2] The dissent highlights a question posed to respondent's counsel at oral argument about whether the deputy's observation of Hartshorn's bloodshot and watery eyes was sufficient, standing alone, to expand the stop. But improvident remarks attributed to counsel are not evidence and not a part of the stipulated facts that comprise the record before us.

(quotation omitted); *see State v. Horner*, 617 N.W.2d 789, 797 (Minn. 2000) (Page, J., concurring in part and dissenting in part) ("The fact that there may be other reasons for [a person's] bloodshot eyes does not mean that his bloodshot eyes do not support probable cause.").

The dissent suggests that Hartshorn's traffic violation should not be considered part of the totality of the circumstances. But the case it cites provides no direct support for this contention. In *State v. Carver*, the defendant was arrested for DWI *before* officers had observed any objective indication of impairment (only subsequent to arrest did officers note the odor of alcohol and bloodshot, watery eyes). 577 N.W.2d 245, 248-49 (Minn. App. 1998). The officers observed the driver only speeding and parking his car awkwardly prior to his arrest. *Id.* at 249. The *Carver* court did not say that the defendant's traffic violation should be excluded from consideration of the totality of the circumstances, only that traffic violations in the absence of any other indication of impairment did not constitute probable cause to arrest for intoxication.

Hartshorn's driving offense is part of the totality of the circumstances, and it was egregious—driving nearly double the speed limit. When considered *in combination* with the fact that Hartshorn expressed confusion as to why he was stopped, the violation supports the deputy's reasonable suspicion of impairment. *See Navarette*, 134 S. Ct. at 1691 (stating that dangerous driving, as opposed to going "slightly over the speed limit," may be an indication of "decreased vigilance, impaired judgment, or some combination of those recognized drunk driving cues").

Finally, we note that there is no indication that Hartshorn's bloodshot and watery eyes was the only factor upon which the deputy based his belief that Hartshorn was impaired. The deputy's report notes the time of day, 12:30 in the morning, and the speeding which led to the initial stop. On this record we conclude that the totality of the circumstances that the deputy was faced with create reasonable suspicion that Hartshorn was impaired. The district court did not err in denying Hartshorn's motion to suppress the test results because the arrest was valid.

**Affirmed.**

**SMITH**, Judge (dissenting)

I respectfully dissent because I believe that our review should be limited to considering the sufficiency of the facts actually relied upon by the deputy to support reasonable suspicion of intoxication rather than all facts potentially available to support reasonable suspicion. When, as here, the facts are stipulated, we review de novo whether those facts provided a law-enforcement officer with a reasonable, articulable suspicion to support the expansion of an investigatory stop. *See State v. Lemert*, 843 N.W.2d 227, 231 (Minn. 2014). We consider the totality of circumstances, "includ[ing] the officer's general knowledge and experience, the officer's personal observations, information the officer has received from other sources, the nature of the offense suspected, the time, the location, and anything else that is relevant." *Appelgate v. Comm'r of Pub. Safety*, 402 N.W.2d 106, 108 (Minn. 1987).

The majority applies de novo review and the totality-of-circumstances test to consider the full constellation of facts potentially available to the deputy here, including Hartshorn's bloodshot eyes as well as his speeding and his purported lack of awareness of his speeding, and to conclude that these facts were sufficient to constitute reasonable, articulable suspicion that Hartshorn was intoxicated. Although I respect the majority's reasoning, I must disagree with the premise that de novo review and the totality-of-circumstances test allows consideration of facts beyond those actually identified by the deputy as the basis for his suspicion that Hartshorn was intoxicated.

The state has the burden to demonstrate that expansion of a traffic stop was justified by reasonable suspicion of criminal activity beyond the reason for the original

stop. *See State v. Askerooth*, 681 N.W.2d 353, 365 (Minn. 2004). I believe this requirement constrains our de novo review in two aspects relevant here: First, this standard excludes from our consideration Hartshorn's speeding because speeding in and of itself does not indicate potential impairment. *Cf. State v. Carver*, 577 N.W.2d 245, 247, 249 (Minn. App. 1998) (holding that travelling 75 m.p.h. in a 55-m.p.h. zone gave "no indication" of probable cause to support an arrest for driving while intoxicated). Similarly, Hartshorn's denial of awareness regarding the reason that he was stopped does not indicate impairment, only Hartshorn's reluctance to admit to speeding. This amounts to an invocation of Hartshorn's constitutional right against self-incrimination. *See Taylor v. Lieffort*, 568 N.W.2d 456, 458 (Minn. App. 1997) ("In addition to allowing refusal to testify at one's criminal trial, the [constitutional] prohibition [against compelled self-incrimination] permits refusal to answer any official questions if the answers might be incriminating in a future criminal proceeding.") As it is a constitutionally protected right, I believe Hartshorn's refusal to admit to the crime of speeding cannot be used as a fact supporting a reasonable suspicion of intoxication.

Second, the state's burden to justify expansion of the stop requires that the state—not judges—identify the facts that supported the deputy's reasonable suspicion of intoxication. Here, the state identified solely Hartshorn's "red and watery eyes" and its belief that the deputy "could not smell any alcohol on [Hartshorn] because of the cigar."[1]

---

[1] Because the state submitted no evidence in response to the suppression motion, the state waived its opportunity to highlight any reasonable-suspicion bases beyond those identified by the deputy in his report. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996).

Although understandable, the deputy's speculation about the odor-masking effect of the cigar is a mere hunch that is insufficient to support reasonable suspicion of intoxication. *See State v. Johnson*, 444 N.W.2d 824, 825-26 (Minn. 1989) ("The suspicion that the officer must be able to articulate must be more than an unarticulated 'hunch;' the officer must be able to point to something that objectively supports his suspicion."). And although "even a single objective indication of intoxication *may* be sufficient, *depending upon the circumstances in each case*," *Martin v. Comm'r of Pub. Safety*, 353 N.W.2d 202, 204 (Minn. App. 1984) (emphasis added), the particular fact of red and watery eyes is, by itself, insufficient to support reasonable suspicion of intoxication. Unlike other physical manifestations of intoxication, such as unusually dilated eyes or nystagmus, red and watery eyes often result from mere fatigue or the presence of an irritant such as cigar smoke or an allergen.[2] To allow such a fact to support expansion of a traffic stop to investigate intoxication would run afoul of the supreme court's caution in *State v. Burbach* against "permit[ting] highly speculative searches against a large group of entirely law-abiding motorists" based on an "attenuated inference" of potentially illegal activity. 706 N.W.2d 484, 489 (Minn. 2005). Although the reasonable-suspicion standard is "not high," *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006), it must be more than an officer's hunch in order to retain any meaning. I therefore respectfully dissent.

---

[2] In response to a question at oral argument, counsel for respondent stated that a driver's red and watery eyes did not by itself support reasonable suspicion of intoxication.